**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JANE DOE**, *Plaintiff,* | § § § | **C.A. NO. 4:20-CV-00968** |
| vs. | § § | DISTRICT JUDGE LYNN N. HUGHES |
| **NATIONAL SCIENCE FOUNDATION, TEXAS SOUTHERN UNIVERSITY** *Defendants.* | § § § § § | MAGISTRATE JUDGE PETER J. BRAY |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT,

COMES NOW, Plaintiff, Jane Doe in Pro Se capacity respectfully filing her First Amended Complaint charging Texas Southern University ("Texas Southern", "TSU" or "the University") and the National Science Foundation in support thereof would show the Court as follows:

**PRELIMINARY STATEMENT**

Plaintiff, a now former student of Texas Southern University and Scholar of the Houston's – Louis Stokes Alliance for Minority Participation ("H-LSAMP"), petitions this Federal civil action charging the Defendant with segregating Federally funded activities and programs, deceptive trade practices, subjecting Plaintiff to hostile public accommodations and educational atmosphere wherein Plaintiff faced multifarious accounts of discrimination on the basis of protected activity, classes and speech and conspiring to interfere with Plaintiff's civil rights.

# <u>VENUE AND JURISDICTION</u>

1. Plaintiff, Jane Doe appears Pro Se pursuant to 28 U.S.C. § 1654 and commences this civil action to redress discriminatory public accommodations and a hostile educational environment pursuant to Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq*., Title II of the Americans with Disabilities Act ("Title II"), 42 U.S.C. § 12101 *et seq*., Section 504 of the Rehabilitation Act of 1973, as amended ("Section 504"), 29 U.S.C. § 794 and Title VI of the Civil Rights Act 1964 ("Title VI"), 42 U.S.C. § 2000(d) *et seq*. Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000(a), Civil Rights Act of 1871, 42 U.S.C. § 1983, 1985 and 1986, the Civil Rights Act of 1866, 42 U.S.C. § 1981.

2. Plaintiff further petitions causes of action pursuant to Texas Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Com. Code § 17.12 and § 17.41 *et seq*. ("DTPA") and Amendment I, Amendment IV and Amendment XIV of the U.S. Constitution.

3. This Court has jurisdiction over the subject matter of the claims arising under Section 504, Title II, Title IX and Title VI pursuant to 28 U.S.C. § 1331.

4. This Court has further jurisdiction over the subject matter of the claims arising under the Amendments I, IV and XIV of the U.S. Constitution pursuant to 28 U.S.C. § 1343(a)(3) and has pendant jurisdiction over the subject matter of the claims arising under DTPA pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in the U.S. District Court for the Southern District of Texas pursuant to 28 U.S.C. §1391(e)(1), as a substantial part of the events or omissions giving rise to Plaintiff's claims herein were committed within the Southern District of Texas, Houston Division.

## FACTS

6. Plaintiff, Jane Doe petitioned in this civil action is the same person petitioned in Civil Action #: 4:17-CV-1957 filed in the U.S. District Court for the Southern District of Texas.

7. Plaintiff Jane Doe is a now 25-year-old wife, mother, and former student of Texas Southern University.

8. Plaintiff has a disability of Post-Traumatic Stress Disorder.

9. In January of 2018 Jane transferred to Texas Southern University from Prairie View A&M University.

10. During the events herein, Plaintiff was a student in the College of Science, Engineering and Technology's Department of Computer Science.

11. In the March of 2018 Plaintiff was sexually assaulted by TSU employee and graduate student in the Department of Computer Science.

12. This incident was reported to Houston Police Department, TSU's Department of Public Safety and TSU's now former Title IX Coordinators.

13. Thereafter, TSU conducted a biased, tainted and retaliatory investigation into Plaintiff's Title IX complaint.

14. Completing this term was emotionally deteriorating for Plaintiff.

15. Plaintiff attended classes daily in the same building as the Respondent where he too worked as an employee of the Office of Information and Technology.

16. One day Plaintiff spotted the Respondent in the Technology Building and she contacted TSU-PD as they'd advised her to.

17. When the dispatched Officer, St. Romain arrived at the scene an hour later he was bothered, annoyed and unconcerned of Plaintiff's safety concerns.

18. Plaintiff requested interim measures from TSU's Title IX Coordinators but was denied such accommodations.

19. On June 20th, 2018 Plaintiff filed a second formal Title IX grievance addressed to Dr. Austin A. Lane, TSU's former President regarding TSU's improper investigatory practices and retaliation during the course of its investigation.

20. TSU never investigated Plaintiff's second Title IX complaint.

21. For Plaintiff's initial Title IX Complaint, the Respondent admitted to sexually assaulting Plaintiff, was found guilty and was reprimanded.

22. This term Plaintiff made all A's with the exception of an "I" or Incomplete she received in her CS 248 course.

23. Mr. Cheng Feng Lin, Plaintiff's CS 248 professor granted her this academic provision as a result of the Title IX investigation.

24. In the Fall of 2018 Plaintiff applied for acceptance into Houston's Louis Stokes Alliance for Minority Participation ("H-LSAMP"), a scholastic academic program funded by the National Science Foundation.

25. The overall goal of the LSAMP program is to assist universities and colleges in diversifying the nation's Science, Technology, Engineering and Mathematician (hereinafter "STEM") workforce by increasing the number of STEM baccalaureate and graduate degrees awarded to populations historically underrepresented in African American, Hispanic American, American Indian, Alaska Native, Native Hawaiian, and Native Pacific Islander disciplines.

26. Plaintiff was required to obtain 3 letters of recommendations for acceptance into the alliance, so she sent requests to three of her professors.

27. Of the three professors, only one professor recommended Plaintiff for the scholarship, an American born professor.

28. The other two foreign born professors denied Plaintiff's requests claiming they do not recommend students for scholarships though they recommended students for scholarships of the ethnicity as them.

29. In a conversation with two COSET students, Diamond and Reyes, these students confirmed COSET administrators' inconspicuous disinterest in the

advancement of Americans in STEM as it is a practice that they only provided equal access to TSU's Federal funded educational programs to the "Saudis".

30. Similarly, Plaintiff had a conversation with another American H-LSAMP Scholar who too shared that she had experienced and witnessed the African professors denying American born students' equal access to TSU's academic programs.

31. With the one letter of recommendation Plaintiff acquired, she was accepted into H-LSAMP by the Program Coordinator, Ms. Tolbert.

32. To maintain acceptance in H-LSAMP Scholars were required to complete 15 Lab hours weekly towards collaborative learning, maintain and 2.5. GPA apply for internships, *inter alia*.

33. This term Plaintiff was undergoing therapy to address her mental health.

34. A few weeks into the semester Plaintiff witnessed a man commit suicide on the freeway while driving to school.

35. Witnessing this incident left Plaintiff despondent and further deteriorated her mental health, however she still continued attending classes, completing assignments and contributing to her H-LSAMP Lab hours.

36. A few weeks later Plaintiff's grandmother died.

37. Witnessing and enduring these traumatic events contemporaneously interfered with Plaintiff's ability to complete this academic term.

38. Further the environment of the H-LSAMP Lab where Plaintiff spent 15 hours a week was distorted as the Ms. Tolbert went on a sabbatical for 2 months.

39. H-LSAMP's tutor, Dr. Roderick Holmes personally perpetuated a racist environment by openly sharing his hatred for Caucasians, "white folk" or "Colonizers", as he would call them.

40. Dr. Holmes also would make discriminatory statements racist slurs regarding different ethnicities and nationalities.

41. Dr. Holmes would also use vulgarities, vituperative derogatory slurs, racial slurs.

42. When he'd make these racial remarks regarding certain nationalities and ethnicities, he'd glare at the students of the nationality and ethnicity in which he was discriminatively discussing and would smile, with malice.

43. Other students of Dr. Holmes too experienced the same discriminatory encounters as Jane, and as essentially as students of Texas Southern University.

44. In addition to the racial discriminatory environment perpetuated by LSAMP overseers, the Laboratory too lacked basic educational necessities for academic success such as functional computers, operational printers, printing paper, dry erase markers, tissues, paper towels and educational literature.

45. In Ms. Tolbert's absence, Jane made an effort to keep the Lab operational by personally purchasing things for the Scholars out of her own money such as tissues, printing paper, hand sanitizers and dry erase markers.

46. The Scholars were thankful for these contributions and thanked Jane.

47. This term a TSU administrator, Ms. Tolbert enrolled Plaintiff in a payment installment agreement due to the H-LSAMP stipends postings to students accounts late.

48. This term Plaintiff requested an "I" or Incomplete in four of five courses due to these unfortunate events.

49. In these requests Plaintiff informed he professors of her disability.

50. Two professors granted Plaintiff's request and issued Incomplete's while two professors denied Plaintiff's right to this academic accommodation and issued Plaintiff F's.

51. Plaintiff believed these denials to be done on the basis of her protected classes of race, color and disability.

52. The issuance of these discriminatory F's placed Plaintiff in a probationary status with H-LSAMP withdrawing 50% of Plaintiff's scholarship funds.

53. Plaintiff believed these professors denials was on the basis of her disability as it mentioned in her requests.

54. In December 2018 Plaintiff met with Ms. Toni Gray to discuss the formal process to file a complaint of discrimination.

55. Ms. Gray then provided Plaintiff with a TSU's "*ADA/504 Policy*" dated September 2013.

56. Plaintiff also spoke with Mr. Chio C. Sheppard, TSU's Assistant Vice President for Student Services who provided himself as a responsible reporting party.

57. January 2019, before the start of the Spring term Plaintiff visited the Collaborative Learning Library to address her standing in H-LSAMP.

58. Ms. Tolbert entered the Lab shortly after Plaintiff with a hostile and offensive demeanor.

59. This day Plaintiff informed Ms. Michelle Y. Tolbert, Dr. Willie Taylor and Dr. Bobby Wilson via e-mail of the events that occurred the prior term and of her disability.

60. A few days after Plaintiff filed an official complaint with TSU's College of Science, Engineering and Technology regarding Dr. Kamel's discriminatory incomplete denials.

61. When the Spring term began the following week Ms. Tolbert's disposition towards Plaintiff was discriminatory and done with indifference.

62. Ms. Tolbert would speak to all the other scholars by name except Plaintiff, overtalk Plaintiff when she'd speak, ignore Plaintiff's requests for academic or organizational assistance and humiliate Plaintiff in the presence of her peers and TSU administrators.

63. One day before the start of an LSAMP meeting Ms. Tolbert looked at Plaintiff with a smirk and said "*hoe, hoe, hoe, hoe, hoe, hoe, hoe*!"

64. Plaintiff's peers witnessed this encounter and too began a subjecting Plaintiff to a sexually charged hostile educational environment.

65. On another occasion while Ms. Tolbert was passing Plaintiff's seat, Ms. Tolbert looked at Plaintiff and said "PTSD is for white folks" with a smug.

66. Other LSAMP Scholars also repeated Ms. Tolbert's racially discriminative acts in addition to other stereotypical statements.

67. Plaintiff reported this extensive harassment to the University's administration in addition to filing a police report with TSU-PD however the harassment Plaintiff endured worsened.

68. After filing official discrimination complaints, Plaintiff was dropped from enrollment as a student in COSET.

69. This retaliatory withdrawal caused Plaintiff to lose her LSAMP scholarship and discontinue her education.

70. Plaintiff exercised her educational right to be reinstated however TSU administrators advised Plaintiff that per Dr. Kendall T. Harris they were exempt

71. TSU-PD Police Officers further harassed Plaintiff on campus which extended off campus in the Houston area.

72. Students and employees also harassed Plaintiff while on campus.

73. One day while accessing TSU's Law Library public accommodation, Plaintiff was too harassed by law students.

74. As Plaintiff walked out of the Library, all the law students and personnel stopped, and someone said "There goes that crazy girl" while pointing at Plaintiff.

75. Enduring this was humiliating, emotionally traumatizing for Plaintiff and denied her equal access to TSU's public accommodations.

76. This harassment continued as Plaintiff accessed TSU's Library Learning Center and Thurgood Marshall Law Library.

77. Plaintiff was also ticketed while having parked at TSU in a spot she'd been harassed at the entire year.

## CAUSES OF ACTION

### A. VIOLATION OF TITLE II, 42 U.S.C. §12101 *et seq.* SECTION 504, 29 U.S.C. §794 *et seq.*

78. Plaintiff repeats and re-alleges by reference each and every allegation above and incorporates them all here as though fully set forth.

79. The disability-based discrimination and retaliation articulated in this complaint was so severe, pervasive, and objectively offensive that it deprived Plaintiff of equal access to Defendants Federally funded educational opportunities, resources, programs and/or benefits provided by the University.

80. Defendant, through its agents, students, faculty, staff, employees and/or administrators created, perpetuated and subjected Plaintiff to a hostile educational environment in violation of Title II, 42 U.S.C. §12101 *et seq*. and SECTION 504, 29 U.S.C. §794 *et seq*. because:

**I.** Plaintiff was member of a protected class;

**II.** Plaintiff was subjected to disability-based discrimination in the form of exclusion, harassment and slurs such as "***PTSD*** *is for white folk*";

**III.** Plaintiff was subjected to this harassment based on her disability (PTSD); and

**IV.** Plaintiff was subjected to a hostile education environment created by the Defendant's lack of policies and procedures and/or its custom to ignore its own policies and policies and Defendant's failure to properly investigate and/or address the disability discrimination and subsequent harassment.

81. Defendant and its officials had actual knowledge of the disability discrimination and harassment since Thursday, December 20, 2018 but failed to investigate and/or discipline Plaintiff's discriminators in a timely manner and consistent with Federal and State legislative promulgations

82. The Defendant's failure to promptly and appropriately respond to the alleged disability discrimination harassment resulted in Plaintiff, on the basis of her disability, being excluded from participation, in, being denied the benefits of, and being subjected to discrimination in the Defendant's Federally funded educational programs COSET and H-LSAMP.

83. Defendant neglected to take immediate, effective remedial steps to resolve the complaints of disability harassment and discrimination and instead acted with deliberate indifference toward Plaintiff.

84. Defendant persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

85. Defendant, through its administrators, policing agents and students engaged in a pattern and practice of behavior designed to discourage, and which did in fact discourage, Jane—who had been harassed for her disability—from seeking protection and from seeking to have disability complaints of harassment and discrimination from being fully investigated.

86. TSU Title II/ADA Policy MAPP 02.05.15 and/or practice constitutes disparate treatment of persons with disabilities like Jane and has had a disparate impact on disabled participants in general.

87. Plaintiff has suffered financial loss, emotional distress, psychological damage, and her character and standing in the community has suffered from the harassment fostered as a direct and proximate result of Defendant's deliberate indifference to her rights under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*.

**B. VIOLATION OF TITLE VI, 42 U.S.C. § 2000(d) *et seq*.**

88. Plaintiff repeats and re-alleges by reference each and every allegation contained above and incorporates them all here as though fully set forth.

89. The race, color, national origin discrimination and retaliation articulated in this complaint was so severe, pervasive, and objectively offensive that deprived Plaintiff of equal access to Defendants Federally funded educational opportunities, resources, programs and/or benefits provided by the University.

90. Defendant, through its agents, students, faculty, staff, employees and/or administrators created, perpetuated and subjected Plaintiff to a hostile educational environment in violation of Title VI, 42 U.S.C. 2000d et seq. because:

**I.** Plaintiff was member of a protected class;

**II.** Plaintiff was subjected to race, color, national origin discrimination in the form of exclusion, harassment and slurs such as "PTSD is for white folk";

**III.** Plaintiff was subjected to this limited educational resources and assistance based on her race and national origin (American); and

**IV.** Plaintiff was subjected to a hostile education environment created by the Defendant's lack of policies and procedures and/or its custom to ignore its own policies and policies and Defendant's failure to properly investigate and/or address the race discrimination and subsequent harassment.

91. Defendant and its officials had actual knowledge of the race/national origin discrimination and harassment since Spring 2019 but failed to investigate and/or discipline Plaintiff's discriminators in a timely manner and consistent with Federal and State legislative promulgations.

92. The Defendant's failure to promptly and appropriately respond to the alleged race discrimination harassment resulted in Plaintiff, on the basis of her race, being excluded from participation, in, being denied the benefits of, and being subjected to discrimination in the Defendant's Federally funded educational programs COSET and H-LSAMP.

93. Defendant neglected to take immediate, effective remedial steps to resolve the complaints of race exclusion and discrimination and instead acted with deliberate indifference toward Plaintiff.

94. Defendant persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

95. Defendant, through its administrators, policing agents and students engaged in a pattern and practice of behavior designed to discourage, and which did in fact discourage, Jane—who had been discriminated for her race and national origin—from seeking protection and from seeking to have race complaints of exclusion and discrimination from being fully investigated.

96. Texas Southern's Title VI policy or lack thereof and/or practice constitutes disparate treatment of persons of protected race like Jane and has had a disparate impact on participants of protected classes of race in general.

97. Plaintiff has suffered financial loss, emotional distress, psychological damage, and her character and standing in the community has suffered from the harassment fostered as a direct and proximate result of Defendant's deliberate indifference to her rights under Title VI of the Civil Rights Act 1964 ("Title VI"), 42 U.S.C. 2000d *et seq*.

## C. VIOLATION OF TITLE IX, 20 U.S.C. § 1681, *et. seq.*

98. Plaintiff repeats and re-alleges by reference each and every allegation contained above and incorporates them all here as though fully set forth.

99. The sexual harassment, sexual violence, sexual assault, sex-based discrimination and retaliation articulated in this complaint was so severe, pervasive, and objectively offensive that it deprived Plaintiff of equal access to Defendants Federally funded educational opportunities, resources, programs and/or benefits provided by the University.

100. Defendant, through its agents, students, faculty, staff, employees and/or administrators created, perpetuated and subjected Plaintiff to a hostile educational environment in violation of Title IX, 20 U.S.C. 1681 because:

I. Plaintiff was member of a protected class;

II. Plaintiff was subjected to sex-based discrimination in the form of exclusion, harassment, slurs and acts such as sexual assault;

III. Plaintiff was subjected to this limited educational resources and assistance based on her sex (female); and

IV. Plaintiff was subjected to a hostile education environment created by the Defendant's lack of policies and procedures and/or its custom to ignore its own policies and policies and Defendant's failure to properly

investigate and/or address the sex-based discrimination and subsequent harassment.

101. Defendant and its officials had actual knowledge of the sex-based discrimination and harassment since March 20, 2018 but failed to investigate and/or discipline Plaintiff's discriminators in a timely manner.

102. The Defendant's failure to promptly and appropriately respond to the alleged sex-based discrimination harassment resulted in Plaintiff, on the basis of her sex, being excluded from participation, in, being denied the benefits of, and being subjected to discrimination in the Defendant's Federally funded educational programs COSET and H-LSAMP.

103. Defendant neglected to take immediate, effective remedial steps to resolve the complaints of sex-based violence, harassment, exclusion and discrimination and instead acted with deliberate indifference toward Plaintiff.

104. Defendant persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

105. Defendant, through its administrators, policing agents and students engaged in a pattern and practice of behavior designed to discourage, and which did in fact discourage, Jane—who had been discriminated on the basis of her sex—from seeking protection and from seeking to have sex-based complaints of exclusion and discrimination from being fully investigated.

106. Texas Southern's Title IX policy or lack thereof and/or practice constitutes disparate treatment of persons of protected race like Jane and has had a disparate impact on participants of protected classes of sex in general.

107. Plaintiff has suffered financial loss, emotional distress, psychological damage, and her character and standing in the community has suffered from the harassment fostered as a direct and proximate result of Defendant's deliberate indifference to her rights under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §1681 *et seq*..

**D. DECEPTIVE TRADE PRACTICES – CONSUMER PROTECTION ACT**

108. As a consumer of Texas Southern University Plaintiff was subjected to nefarious unconscionable actions or courses of action by virtue of the Defendants unlawful discriminatory, deceptive and negligent delivery of its goods and services.

109. Texas Southern makes countless deceptive advertisements regarding the character of their administration, the quality of their academic programs and the substance of scholastic and educational assistance and opportunities provided to students of Federally funded programs and activities.

110. Plaintiff attended Texas Southern under the impression that TSU Facts provided by the University were true.

**E. CIVIL RIGHTS ACT OF 1871 § 1983, 1985 & 1986**

111. Ms. Tolbert, under Color of Law of the National Science Foundation, conspired to deprive Plaintiff of civil and constitutional rights within Federally funded activities and programs.

112. TSU-PD, as an act to intimidate Plaintiff, harassed and deprived Plaintiff of civil and constitutional rights within Federally funded activities and programs.

113. The countless employees who Plaintiff formally reported harassment and discrimination to, failed to intervene in the acts that directly deprived Plaintiff of civil and constitutional rights.

## JURY TRIAL DEMAND

114. Plaintiff requests that all actions in this petition be heard before a jury.

115. Defendant's conduct constitutes violations of statutory and/or common law. Such unlawful conduct seriously affected Plaintiff in her education and future potential employment contingent upon her membership in the LSAMP scholastic alliance. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer financial loss, humiliation, mental anxiety and stress, and other damages. Plaintiff has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies and procedures of Defendant. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages in an amount to be proved at trial.

116. Additionally, Plaintiff has incurred out-of-pocket expenses, which include financial losses, damages, hinderances and other expenses to preserve her ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages as shall be proven at trial.

117. Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff also seeks postjudgment interest at the maximum rate allowed by law in the event that Defendant does not promptly tender damages assessed against them and to avoid unjustly enriching Defendant.

## IX. PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

A. Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant from engaging in any practice which discriminates on the basis of race, color, disability and other protected classes.

B. All damages to which Plaintiff may be entitled pursuant to this Original Complaint, or any amendment(s) thereto, including but not limited to reimbursement for the entire cost spent on the vehicle, statutory relief at law, and equity;

C. Compensatory damages for pain and mental anguish in the past and future;

D. Reasonable filing fees, with conditional awards in the event of appeal;

E. Pre-judgment interest at the highest rate permitted by law;

F. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

G. Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

H. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any amendment hereto.

Respectfully submitted,

/s/ Jane Doe
Jane Doe
Plaintiff
Pro Se
9401 Beechnut St. Apt. 606
Houston, Texas 77036 – 66104
*janedoe.420cv00968@icloud.com*

**Dated:** Friday, November 27th, 2020